UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LACLEDE GAS COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Cause No. 4:11-cv-01766-HEA |
| ST. CHARLES COUNTY, | ) | |
| STATE OF MISSOURI and L.F. KRUPP | ) | |
| CONSTRUCTION, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED VERIFIED COMPLAINT

Plaintiff Laclede Gas Company ("Laclede") states the following as its Amended Verified Complaint against Defendants St. Charles County, State of Missouri ("St. Charles County" or the "County") and L.F. Krupp Construction, Inc., d/b/a Krupp Construction Inc. ("Krupp").

### Parties

1.      This action is brought under 42 U. S. C. § 1983 to remedy and prevent deprivation of Plaintiff Laclede's rights secured by the Takings Clause of the Fifth Amendment to the United States Constitution.

2.      Plaintiff Laclede is a corporation organized and existing under the laws of the State of Missouri and is a publicly regulated utility company that provides natural gas service, by means of gas lines, mains and other facilities to customers throughout the greater St. Louis Metropolitan area.

3.      Defendant County is a Charter County and political subdivision of the State of Missouri.

EXHIBIT
A

4.     Upon information and belief, Defendant Krupp is a corporation organized and existing under the laws of the State of Missouri, doing business under the name Krupp Construction, Inc.

**Jurisdiction and Venue**

5.     This Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and 42 U.S.C. § 1983, as well as the federal Pipeline Safety Act, 49 U.S.C. §§ 60101-60301. This Court has pendent jurisdiction over state claims and supplemental jurisdiction over other parties pursuant to 28 U. S. C. § 1367.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because Defendants County and Krupp are residents of this judicial district, and because the acts complained of herein emanated from or took place within this district.

**Factual Allegations**

A.     **Laclede's Gas Mains and Lines and the Subject Easements**

7.     Laclede has installed gas lines, mains and other facilities throughout St. Charles County for the purpose of providing natural gas service to its ratepayers who are residents of the County.

8.     Beginning in 1987, the developers/owners of the Muirfield, Crosshaven and Summit at Whitmoor subdivisions in St. Charles County conveyed easements to Laclede ("Laclede Easements") to ensure gas utility service to residents of these subdivisions. The easement conveyances are contained in five plats recorded for development of these subdivisions. These subdivision plats (referred to hereinafter as the "Subdivision Plats") include the following: Muirfield Plats One, Two and Three (recorded at St. Charles County Plat Book

27, pages 168-69, Plat Book 27, pages 170-71, and Plat Book 28, pages 72-73, respectively);

Crosshaven Estates (recorded at St. Charles County Plat Book 36, page 318); and The Summit at

Whitmoor (recorded at St. Charles County Plat Book 36, page 390). True and accurate copies of

the Subdivision Plats are attached hereto as Exhibits 1 through 5, respectively.

     9.     Each of the subdivisions created by the Subdivision Plats borders Pittman Hill

Road.

     10.     Beginning in 1987, Laclede installed gas lines, mains and other facilities in the

Laclede Easements. The Laclede Easements and related gas facilities are located in the area of

Pitman Hill Road in St. Charles County. These gas facilities include the 6 inch gas main that is

the subject of Counts I through III of this Complaint (the "Gas Main").

     11.     In 2007, the County planned to widen and improve a section of Pitman Hill Road.

This road project is known as the Pitman Hill Road Phase II project ("Project"). The Project

included relocation of certain Laclede gas lines and facilities because road construction and use

would interfere with the Laclede Easements and existing gas lines and facilities.

     12.     Laclede expressed willingness to relocate its facilities to accommodate the Project

but advised the County that it was entitled to reimbursement for its relocation costs because the

Laclede Easements are constitutionally protected property interests.

     **B.**     **The Easement Litigation between Laclede and the County**

     13.     The County refused to compensate Laclede for the cost of moving its gas

facilities.

     14.     Instead, on or about September 15, 2008, the County filed a Declaratory

Judgment action against Laclede in the Circuit Court of St. Charles County, State of Missouri.

That declaratory judgment action (together with subsequent appeals discussed below, the

"Easement Litigation") was styled *St. Charles County v. Laclede Gas Company*, Cause No. 0811-CV08506. The County sought a declaratory judgment that Laclede was required to relocate its gas facilities from the Laclede Easements at its own expense.

15. On November 5, 2009, the Circuit Court of St. Charles County entered summary judgment in favor of St. Charles County.

16. Laclede appealed the circuit court's decision.

17. On August 30, 2011, the Missouri Supreme Court issued its Opinion ("Opinion") reversing the trial court's November 5, 2009 Judgment and holding that Laclede possessed constitutionally protected property interests in the Laclede Easements. *See St. Charles County v. Laclede Gas Company*, --- S.W.3d ---, 2011 WL 3837157 (Mo. banc Aug. 30, 2011) (copy attached hereto as Exhibit 6). The Missouri Supreme Court held that the Laclede Easements were protected under the Takings Clause of the Fifth Amendment of the United States Constitution. *Id.* at *2. The Missouri Supreme Court further held that the interference with Laclede's easement rights constituted a taking of Laclede's property, and that Laclede cannot be compelled to relocate its facilities from the Laclede Easements without compensation from the County. *Id.* On January 31, 2012, the Missouri Supreme Court entered its order denying the County's Motion for Rehearing, and issued its Mandate to the trial court ordering further proceedings consistent with the Opinion. A copy of the Missouri Supreme Court's January 31, 2012 Order and Mandate is attached hereto as Exhibit 7. The denial of the Motion for Rehearing rendered the Missouri Supreme Court's Opinion final.

18. Throughout the Easement Litigation, the County has engaged in a pattern of oppressive and harassing conduct to force Laclede to surrender its constitutional rights to compensation.

19.     In addition to constructing a retaining wall over a live gas main, as hereinafter alleged, this pattern of conduct has also included:

a.      The County refused to honor existing Utility Agreements with Laclede which provided for reimbursement of Laclede's relocation costs on other road projects. To collect amounts owed it under these Utility Agreements, Laclede was forced to file a lawsuit.

b.      The County unsuccessfully prosecuted Laclede for contempt to force relocation of gas facilities from the Laclede Easements, despite the fact that the trial court's judgment did not require Laclede to take any action.

c.      After the failed contempt charge, the County pursued through trial a 95-count criminal complaint against Laclede, alleging that Laclede violated a County ordinance by claiming compensation for moving its lines. The County then dismissed the criminal action after the issuance of the Opinion.

d.      After Laclede filed the present action, on or about January 18, 2012, the County filed in Missouri state court a Petition alleging claims that pertain to the same parties, easements, gas lines, and other facts, transactions and occurrences as the present action with respect to Ehlmann Road. That case is styled *St. Charles County v. Laclede Gas Company*, Cause no. 1211-CC00051, Circuit Court of St. Charles County, State of Missouri.

20.     As a direct result of the County's harassing litigation tactics related to the Easement Litigation, Laclede has been damaged.

**C.     The County's Construction of the Retaining Wall Over Laclede's Easement and Gas Main**

21.     Upon information and belief, the County contracted with Krupp to serve as its general contractor on the Project.

22.     Upon information and belief, the County and Krupp began construction on the Project in May, 2011.

23.     Upon information and belief, after failing to force Laclede to relocate its Gas Main and other facilities without compensation, the County instructed Krupp to proceed with road construction over the Laclede Easements and its existing facilities, including the Gas Main.

24.     On or about July 27, 2011, Laclede learned that the County and Krupp had begun construction of Retaining Wall #3 (the "Retaining Wall") and completed installation of two rows of concrete blocks directly over Laclede's Easement and Gas Main.  The Retaining Wall was located approximately in the area of Station 14+50 to Station 16+50 of the Project.

25.     Shortly thereafter, Laclede informed Krupp, by letter, that the Retaining Wall encroached on the Laclede Easements and was directly over the Gas Main.  It demanded that construction over the Gas Main cease.

26.     Despite repeated demands by Laclede, the County and Krupp continued construction of the Retaining Wall over the Gas Main.  Copies of the pertinent correspondence are attached hereto as Group Exhibit 8.

27.     Not only did it refuse to stop construction over the Gas Main, on August 9, 2011, the County threatened to sue Laclede once again for assertion of its rights in the Laclede Easements.  A true and accurate copy of the August 9, 2011 letter from the County to Laclede is attached hereto as Exhibit 9.

28.     When the Missouri Supreme Court issued its Opinion in the Easement Litigation, Laclede advised the County that the Opinion validated its easement rights and that construction of the Retaining Wall constituted an actionable interference with the Laclede Easements, and a unconstitutional taking. *Id.* at p. 2. A true and accurate copy of that September 7, 2011 letter is attached hereto as Exhibit 10.

29.     Despite the Opinion, the County has refused and continues to refuse to remove the Retaining Wall from the Laclede Easement or to reimburse Laclede for its relocation costs.

**D.      The County and Krupp Have Refused to Remove the Retaining Wall, and Have Continued the Project**

30.     The County and Krupp completed construction of the Retaining Wall at some date after Laclede notified the County of the presence of its easement and Gas Main.

31.     The presence of the Retaining Wall over the Laclede Easement and Gas Main has severely diminished and/or destroyed completely the value of the Laclede Easement and Gas Main. Because of the Retaining Wall, Laclede is unable to service its Gas Main.

32.     The Retaining Wall over the Laclede Easement and Gas Main may also endanger public safety. The Gas Main was not designed and constructed with the intent that a concrete-block retaining wall be constructed above it. The Retaining Wall interferes with the Laclede Easement, prevents access to the Gas Main in case of a leak or other service issues, and over time, may threaten the structural integrity of the Gas Main. Among the rights guaranteed by the constitutionally protected Laclede Easement is access to its facilities when and as necessary.

33.     The plans for the Project require further construction of retaining walls and road improvements in conflict with other Laclede Easements and existing gas facilities.

34.     If, as planned, the County and Krupp construct retaining walls and other improvements over the Laclede Easements and gas facilities as part of the Project, such

construction will unreasonably interfere with and diminish, if not completely destroy the value of the Laclede Easements and related gas facilities.

35. If retaining walls and other road improvements are constructed over the Laclede Easements and existing gas facilities, they may endanger the public safety.

## COUNT I—VIOLATION OF 42 U.S.C. § 1983 (against St. Charles County)

36. Laclede restates and incorporates by reference the preceding Paragraphs 1 through 35 as if fully set forth herein.

37. As owner, Laclede lawfully installed its Gas Main and other facilities in the Laclede Easements and possesses compensable property interests in the Laclede Easements.

38. The County through its contractor Krupp acted under color of state law by constructing the Retaining Wall over the Laclede Easement and has thereby deprived Laclede of its rights secured by the Takings Clause of the Fifth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

39. The County has failed and refused to compensate Laclede for the taking of its property. Its refusal to compensate Laclede violates the Takings Clause of the Fifth Amendment to the United States Constitution and 42 U.S.C. § 1983.

40. As a direct result of the County's actions, Laclede has been damaged.

41. Despite the Opinion, the County has failed and refused to remove the Retaining Wall from the Laclede Easement and threatens further interference with and the taking of its compensable interests in other Laclede Easements impacted by the Project.

42. Plans for the Project include construction of other retaining walls and improvements within the Laclede Easements and over existing gas facilities.

43.     Unless this Court restrains the County and Krupp, they will continue construction of retaining walls and other improvements within the Laclede Easements and over its gas facilities, thereby further depriving Laclede of its constitutionally protected property interests. Unless this Court restrains the County and Krupp, Laclede will suffer irreparable injury.

44.     Laclede has no adequate remedy at law.

45.     The County has acted with malice, and with conscious indifference to and reckless disregard for Laclede's constitutional rights.

WHEREFORE, for all of the foregoing reasons, Laclede respectfully requests that this Court:

(a)     enter judgment in its favor on this Count I;

(b)     award Laclede its damages caused by the County's deprivation of Laclede's constitutionally-protected property rights;

(c)     enjoin the County's existing deprivations of Laclede's constitutionally-protected property rights, and so as to prevent future deprivations of Laclede's constitutionally-protected property rights, and ordering that construction on the Project be stopped and/or limited such that no further deprivations of Laclede's constitutionally-protected property rights occur;

(d)     award Laclede punitive damages based upon the County's oppression, malice, gross negligence, willful or wanton misconduct, and/or a reckless disregard for the civil rights of Laclede and disregard for public safety;

(e)     award Laclede its attorneys' fees incurred herein;

(f)     award Laclede its costs and other expenses incurred herein; and

(g)     grant such other and further relief as the Court deems just and proper under the circumstances.

## COUNT II—NUISANCE (against St. Charles County)

46.     Laclede restates and incorporates by reference the preceding Paragraphs 1 through 45 as if fully set forth herein.

47.     The County's unreasonable and illegal interference with the Laclede Easement and Gas Main constitutes a nuisance.

48.     The County plans future construction of retaining walls and road improvements directly over other Laclede Easements and gas facilities as part of the Project. Its planned construction will cause further illegal and unreasonable interferences with the Laclede Easements and gas facilities, constituting a nuisance in such additional locations as well.

49.     Laclede has repeatedly notified the County of its illegal and unreasonable interference with the Laclede Easement and Gas Main to no avail. On many occasions, Laclede has expressed its willingness to relocate its gas facilities if the County provides binding assurances that Laclede will be compensated for the loss of its easement rights and existing gas facilities. To date, the County has refused to provide any such assurances.

50.     Laclede has been damaged as a direct result of the County's illegal and unreasonable interference with the Laclede Easement and Gas Main.

51.     Moreover, the continued construction of retaining walls and other improvements over Laclede Easements and gas facilities threatens Laclede with irreparable harm. Unless this Court enjoins such construction, Laclede will suffer irreparable harm. Laclede has no adequate remedy at law.

52.     The County's illegal conduct is oppressive, malicious, and in wilful or reckless disregard of Laclede's rights.

WHEREFORE, for all of the foregoing reasons, Laclede respectfully requests that this Court:

(a)     enter judgment in its favor on this Count II;

(b)     award Laclede its damages caused by the County's interference with Laclede's easements and easement rights;

(c)     order injunctive relief so as to remedy the County's existing interference with Laclede's easements and easement rights, and so as to prevent future interferences with Laclede's easements and easement rights, including ordering that construction on the Project be stopped and/or limited such that no further interferences with Laclede's easements and easement rights occur;

(d)     award Laclede punitive damages based upon the County's oppression, malice, gross negligence, willful or wanton misconduct, and/or a reckless disregard for Laclede's rights and disregard for public safety;

(e)     award Laclede its attorneys' fees incurred herein;

(f)     award Laclede its costs and other expenses incurred herein; and

(g)     grant such other and further relief as the Court deems just and proper under the circumstances.

## COUNT III—NEGLIGENCE (against Krupp)

53.     Laclede restates and incorporates by reference the preceding Paragraphs 1 through 52 as if fully set forth herein.

54.     As contractor for the Project working near and around established utility easements and facilities, Krupp owed a duty of reasonable care to Laclede.

55.    The duty of reasonable care required Krupp to comply with the Missouri Underground Facility Safety and Damage Prevention Act, R.S.Mo. §§ 319.015 *et seq.* ("Underground Facility Act").

56.    Sections 319.025(1) and 319.026(1) R.S. Mo. of the Underground Facility Act, required Krupp to identify the location of the Gas Main and other gas facilities before beginning its work.

57.    Before beginning construction of the Retaining Wall, Krupp failed to identify the location of the Gas Main and similar facilities as required by the Underground Facilities Act.

58.    By violating the Underground Facilities Act, Krupp violated its duty of reasonable care, creating a presumption of its negligence.

59.    Had Krupp complied with the Underground Facilities Act, it would have verified the presence of the Gas Main before constructing the Retaining Wall and could have avoided interference with the Laclede Easement and Gas Main.

60.    Krupp's construction of the Retaining Wall was negligent, grossly negligent and in reckless or wilful disregard of Laclede's rights.

61.    As a direct result of Krupp's construction of the Retaining Wall, Laclede has been damaged.

62.    Upon information and belief, Krupp has threatened to continue, and/or is continuing construction on the Project, including but not limited to the future construction of other retaining walls and improvements over the Laclede Easements and gas facilities.

63.    Krupp's conduct with respect to the Laclede Easement and Gas Main was grossly negligent, malicious, wilful, and/or in reckless disregard for Laclede's property rights.

64.     If Krupp is permitted to continue construction of this Project over the Laclede Easements and gas facilities, Laclede will suffer irreparable harm.  Likewise, if this Court permits the Retaining Wall to remain in place, Laclede will suffer irreparable harm.  The presence of the Retaining Wall may endanger the public health and safety by preventing access to the Gas Main in case of leaks or other service issues.

65.     Laclede has no adequate remedy at law.

WHEREFORE, for all of the foregoing reasons, Laclede respectfully requests that this Court:

(a)     enter judgment in its favor on this Count III;

(b)     award Laclede its damages caused by the Krupp's negligence;

(c)     order injunctive relief so as to remedy Krupp's existing damage to Laclede's easements and easement rights, and so as to prevent future damage to Laclede's easements and easement rights, and ordering that construction on the Pitman Hill Road Phase II project be stopped and/or limited such that no further interferences with Laclede's easements and easement rights occur;

(d)     award Laclede punitive damages based upon Krupp's oppression, malice, gross negligence, willful or wanton misconduct, and/or a reckless disregard for Laclede's rights and disregard for public safety;

(e)     award Laclede its attorneys' fees incurred herein;

(f)     award Laclede its costs and other expenses incurred herein; and

(g)     grant such other and further relief as the Court deems just and proper under the circumstances.

## COUNT IV—DECLARATORY JUDGEMENT REGARDING

## CONSTITUTIONALITY OF § 229.360 R.S. Mo. (against St. Charles County)

66.     Laclede incorporates herein as though expressly set forth the allegations of paragraphs 1 through 65 of the Complaint.

67.     Laclede possesses utility easements conveyed by subdivision plat in other areas of the County and has lawfully installed its gas lines, mains, and other facilities in such utility easements. Included among these utility easements are easements conveyed by the St. Charles Hills subdivision plats 5 and 6; easements conveyed by the Bluff Point and Georgian Oaks subdivision plats; and, easements conveyed by the Park Charles South Plat One and Fairfield Place subdivision plats (collectively "Threatened Easements"). Copies of the plats conveying the Threatened Easements are attached hereto as Exhibits 11, 12, and 13, respectively.

68.     The Threatened Easements, and gas facilities installed thereunder, border on or are adjacent to Ehlmann, Caulks Hill and Thoele Roads, respectively, in St. Charles County.

69.     The County plans road improvements for Ehlmann, Caulks Hill and Thoele Roads which are incompatible and interfere with the Threatened Easements and related gas facilities. In each case, the County notified Laclede of potential utility conflicts and requested that Laclede submit a Relocation Plan, pursuant to the St. Charles County Road Utility Relocation Act ("SCCRURA"), for the relocation of its facilities from the Threatened Easements.

70.     As requested, Laclede submitted a Relocation Plan to the County for relocation of the conflicting gas facilities from each of the Threatened Easements. Each proposed Relocation Plan included a draft Utility Agreement, which provided for County reimbursement of Laclede's projected relocation expenses. A copy of the Relocation Plan and accompanying draft Utility

Agreement, dated March 23, 2010, for the Ehlmann Road project is attached hereto as Exhibit 14.

71.     Historically, Laclede and the County have entered into such Utility Agreements to provide for County reimbursement of relocation expenses whenever Laclede's gas facilities were located in utility easements.

72.     The County rejected the Ehlmann Road Relocation Plan because it was contingent on the County's agreement to reimburse Laclede for relocation costs.  A copy of the Letter from Chris Bostic to Laclede, dated February 11, 2011, is attached hereto as Exhibit 15.  The County has demanded that Laclede proceed with relocation of its gas facilities without reimbursement for the taking of its constitutionally protected rights in the Threatened Easement and threatened Laclede with fines under SCCRURA if it did not submit a Relocation Plan which eliminated the reimbursement contingency.

73.     In making these demands and threats to Laclede to force it to surrender its constitutional rights, the County informed Laclede that:  "It's good to be the King" citing Brooks, Mel, History of the World: Part I (20th Century Fox, 1981).  See, Exhibit 15.

74.     The County followed the same course of conduct with respect to the Relocation Plan and Utility Agreement submitted for the Caulks Hill and Thoele Road projects.

75.     Laclede has repeatedly offered to proceed with relocations contingent on an agreement from the County to escrow the estimated relocation costs pending a final decision in the Easement Litigation, which costs would be paid only in the event Laclede was successful in the Easement Litigation.

76.     The County has rejected every offer Laclede made that would have preserved its constitutional rights to reimbursement of relocation expenses and continues to threaten Laclede

with deprivation of its rights secured by the Takings Clause of the Fifth Amendment to the United States Constitution in violation of 42 U. S. C. § 1983.

77.     Notwithstanding the Missouri Supreme Court's recognition of Laclede's constitutionally protected easement rights in the Easement Litigation, the County continues to threaten Laclede with legal action for asserting its rights.

78.     Most recently, the County notified Laclede that, if it failed to remove its gas facilities from the Threatened Easements in conflict with the Ehlmann and Thoele Road projects by October 21, 2011 and October 28, 2011, respectively, it would enforce its rights under § 229.360 R.S.Mo. against Laclede. The County further threatened to hire its own contractor to relocate such gas facilities at Laclede's expense. Copies of the County's notices to Laclede, for the Ehlmann and Thoele Road projects are attached hereto as Exhibits 16 and 17, respectively.

79.     Section 229.360 provides in pertinent part: "It shall be the duty of any person, firm or corporation owning, leasing, or operating any such conduits, poles, pole lines, wires, mains, pipes, conductors, sewers, drains, tramways or other objects, after service of the notice required in section 229.350 to furnish such competent workmen and crews as may be necessary to effect such removal, change or alteration, and to pay all actual expenses which are incurred by any person, firm, corporation or political subdivision in so doing. In making such necessary removal, change or alteration, no other person, firm, corporation or political subdivision shall interfere with or make any such change, removal or alteration until the owner, lessee or operators of such object shall have been notified as provided in section 229.350, and shall have failed or refused to do so within a reasonable time, and in the event of such failure or refusal such work shall be done only by competent and experienced workmen at the cost and expense, however, of the owner, lessee or operators of such object."

80.     Laclede has notified the County that § 229.360 R.S.Mo. does not authorize the County to remove its gas facilities from the Threatened Easements and charge Laclede for the cost of doing so.  Copies of Laclede's notification letters are attached hereto as Group Exhibit 18.

81.     On the contrary, § 229.360 R.S.Mo. does not apply to utility easements in platted subdivisions under the circumstances of this case.

82.     If the County applies § 229.360 R.S.Mo. as outlined in its notices to Laclede, then § 229.360 R.S.Mo. is unconstitutional as violative of the Takings Clause of the Fifth Amendment to the United Statement Constitution.  Laclede is constitutionally entitled to just compensation for relocating its gas facilities from the Threatened Easements.

83.     There is a ripe and justiceable controversy concerning the interpretation, application, and constitutionality of § 229.360 R.S.Mo.

84.     If the County hires its own contractor to relocate gas facilities from the Threatened Easements, Laclede will suffer irreparable harm in that neither the County nor its contractors are competent to perform such work.  Such work requires experienced workmen accustomed to working with gas lines, mains and other facilities and coordination with Laclede to maintain service to its customers and prevent dangerous interference with live facilities.

85.     Laclede has no adequate remedy at law.

WHEREFORE, Plaintiff Laclede Gas Company prays that this Court:

(a)     Enter judgement in its favor on Count IV;

(b)     Declare that § 229.360 R.S.Mo. does not authorize the County to relocate Laclede's gas facilities from the Threatened Easements and that it does not authorize the County to charge Laclede for the cost of doing so;

(c)     Declare that to extent that the County applies § 229.360 R.S.Mo. to gas facilities in the Threatened Easements, it is unconstitutional as applied and violative of the Takings Clause of the Fifth Amendment to the U.S. Constitution;

(d)     Enjoin Defendant St. Charles County from taking any action to remove and/or relocate Laclede's gas facilities from the Threatened Easements, or otherwise interfering with such Easements and related gas facilities;

(e)     Award Laclede its attorneys' fees and costs as permitted by law; and

(f)     For such other and further relief as this Court considers appropriate under the circumstances.

## COUNT V – INJUNCTION UNDER NATIONAL
## PIPELINE SAFETY ACT, 49 U.S.C. § 60121

86.     Laclede incorporates herein as though expressly set forth the allegations of paragraphs 1 through 65 of the Complaint.

86.     Laclede possesses utility easements conveyed by subdivision plat in certain areas of the County and has lawfully installed its gas lines, mains, and other facilities in such utility easements.  Included among these utility easements are easements conveyed by the St. Charles Hills subdivision plats 5 and 6 (the "Threatened Ehlmann Easements").  Copies of the plats conveying the Threatened Ehlmann Easements are attached hereto as Exhibit 11.

87.     The Threatened Ehlmann Easements, and gas facilities installed thereunder, border on or are adjacent to Ehlmann Road in St. Charles County.

88.     The County plans road improvements for Ehlmann Road which are incompatible and interfere with the Threatened Ehlmann Easements and related gas facilities.  The County requested that Laclede submit a Relocation Plan, pursuant to the St. Charles County Road Utility

Relocation Act ("SCCRURA"), for the relocation of its facilities from the Threatened Ehlmann Easements.

89.     As requested, Laclede submitted a Relocation Plan to the County for relocation of the conflicting gas facilities from the Threatened Ehlmann Easements. The Relocation Plan included a draft Utility Agreement, which provided for County reimbursement of Laclede's projected relocation expenses. A copy of the Relocation Plan and accompanying draft Utility Agreement, dated March 23, 2010, for the Ehlmann Road project is attached hereto as Exhibit 14.

90.     The County rejected the Ehlmann Road Relocation Plan because it was contingent on the County's agreement to reimburse Laclede for relocation costs. The County has demanded that Laclede proceed with relocation of its gas facilities without reimbursement for the taking of its constitutionally protected rights in the Threatened Ehlmann Easement and threatened Laclede with fines under SCCRURA if it did not submit a Relocation Plan which eliminated the reimbursement contingency.

91.     The County notified Laclede that, if it failed to remove its gas facilities from the Threatened Ehlmann Easements in conflict with the Ehlmann Road project by October 21, 2011, it would enforce its alleged rights under § 229.360 R.S.Mo. against Laclede. The County further threatened to hire its own contractor to relocate such gas facilities at Laclede's expense. A copy of the County's notice to Laclede for the Ehlmann Road project is attached hereto as Exhibit 16.

92.     Laclede has notified the County that the County is not authorized to remove Laclede's gas facilities from the Threatened Ehlmann Easements. Copies of Laclede's letters in which such notice was provided are attached hereto as Group Exhibit 18. These notices were given more than 60 days prior to February 2, 2012.

93.     On or about January 4, 2012, counsel for Laclede sent Steven Reed, general counsel for the Missouri Public Service Commission (the "PSC"), a letter notifying the PSC of the County's threats to destroy or damage Laclede's gas lines in the Threatened Ehlmann Easements. A copy of the January 4, 2012 letter is attached hereto as Exhibit 19. The January 4, 2012 letter further notified the PSC that the County's threatened actions would violate the Pipeline Safety Act, as well as Laclede's published tariff (P.S.C.Mo. No. 5 Consolidated, Fourth Revised Sheet No. R-12, Section 13), and Missouri's anti-tampering statute, R.S.Mo. §§ 569.080 and 569.090. *Id.* The letter requested that the PSC institute an enforcement action against the County under the Pipeline Safety Act, and notified the PSC that Laclede intended to amend its Verified Complaint in the present action to include a Pipeline Safety Act claim against the County if the PSC did not institute an action against the County. *Id.*

94.     On January 30, 2012, the PSC sent Laclede and its counsel a letter notifying them that the PSC did not intend to bring a Pipeline Safety Act enforcement action against the County. A copy of the January 30, 2012 letter is attached hereto as Exhibit 20. In the letter, the PSC also stated that the letter should be considered as a waiver of the PSC's right to pursue such an action. *Id.* In the letter, the PSC further stated that it intended to "step aside so that Laclede may pursue whatever action it feels appropriate under state or federal law." *Id.*

95.     If the County and/or any contractor or subcontractor hired and directed by the County attempts to deactivate, relocate, remove and/or otherwise tamper with Laclede's gas lines located in the Threatened Ehlmann Easements, the County will damage or destroy Laclede's gas lines in violation of the Pipeline Safety Act, 49 U.S.C. § 60123(b). Such work requires experienced workmen accustomed to working with gas lines, mains and other facilities and

coordination with Laclede to maintain service to its customers and prevent dangerous interference with live facilities.

96.     Laclede's gas lines located in the Threatened Ehlmann Easements are interstate gas pipeline facilities, and/or intrastate gas pipeline facilities that are used in interstate commerce or in any activity affecting interstate commerce.

97.     The County is a "person," as defined by 49 U.S.C. § 60101(a)(17), and is subject to the provisions of the Pipeline Safety Act.

98.     Under 49 U.S.C. § 60121(a)(1), Laclede is entitled to bring a civil action for an injunction to prevent any violation of the Pipeline Safety Act, including but not limited to preventing the County from damaging or destroying Laclede's gas lines. By its letter dated January 30, 2012, the PSC has waived the 60 day notice provision under 49 U.S.C. § 60121(a)(1)(A).

99.     There is a ripe and justiceable controversy concerning the potential destruction or damaging of Laclede's gas lines, in that the County has threatened to forcibly move those lines if Laclede did not do so by October 21, 2011.

100.     If the County hires its own contractor to relocate gas facilities from the Threatened Ehlmann Easements, Laclede will suffer irreparable harm in that neither the County nor its contractors are competent to perform such work. Such work requires experienced workmen accustomed to working with gas lines, mains and other facilities and coordination with Laclede to maintain service to its customers and prevent dangerous interference with live facilities.

101.     Laclede has no adequate remedy at law.

WHEREFORE, Plaintiff Laclede Gas Company prays that this Court:

(a)     Enter judgement in its favor on Count V;

(b)     Enjoin the County and/or any contractor or subcontractor hired by the County

from taking any action to deactivate, relocate, remove and/or otherwise tamper with Laclede's

gas lines located in the Threatened Ehlmann Easements;

(c)     Award Laclede its costs, reasonable expert witness fees, and reasonable attorney's

fees as provided in 49 U.S.C. § 60121(b), or otherwise permitted at law or in equity; and

(d)     For such other and further relief as this Court considers appropriate under the

circumstances.


Respectfully submitted,

THOMPSON COBURN LLP


By  */s/ Booker T. Shaw*
    Booker T. Shaw, #25548MO
    Mary M. Bonacorsi, #28332MO
    Paul D. Lawrence, #53202MO
    One US Bank Plaza
    St. Louis, Missouri 63101
    314-552-6000
    FAX 314-552-7000
    bshaw@thompsoncoburn.com
    mbonacorsi@thompsoncoburn.com
    plawrence@thompsoncoburn.com

Attorneys for Plaintiff
Laclede Gas Company

## VERIFICATION

Kent Thaemert, being first duly sworn on his oath, states that he is Senior District

Engineer for Plaintiff Laclede Gas Company; that he is authorized to make this Verification; that

he has reviewed the allegations in this Verified Amended Complaint; and, that the allegations

are true and accurate based on personal knowledge unless otherwise stated.

_Kent Thaemert_
Kent Thaemert

State of Missouri      )
                        )   SS
City of St. Louis        )

SUBSCRIBED and SWORN to before me this _6th_ of February, 2012.

_Katherine I Rearden_
Notary Public

My Commission Expires _May 10, 2015_

NOTARY SEAL

KATHERINE I. REARDEN
MY COMMISSION EXPIRES
May 10, 2015
#11047328
ST. LOUIS COUNTY
NOTARY PUBLIC, STATE OF MISSOURI

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2012, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

Greg H. Dohrman
Associate County Counselor
Office of the St. Charles County Counselor
100 North Third Street
St. Charles, MO 63301
gdohrman@sccmo.org

Peter J. Dunne
Pitzer Snodgrass, P.C.
100 S. Fourth Street, Suite 400
St. Louis, MO 63102
dunne@rpslaw.com

*/s/ Booker T. Shaw*



# MUIRFIELD
## PLAT ONE
### A TRACT OF LAND BEING PART OF FRACTIONAL
### SECTION 30, TOWNSHIP 46 NORTH, RANGE 4 EAST,
### ST. CHARLES COUNTY, MISSOURI

PLAINTIFF'S
EXHIBIT
A





# MUIRFIELD

## PLAT TWO

A TRACT OF LAND BEING PART OF FRACTIONAL
SECTION 30, TOWNSHIP 46 NORTH, RANGE 4 EAST
ST. CHARLES COUNTY, MISSOURI

EXHIBIT 2




EXHIBIT 3

# MUIRFIELD
## PLAT THREE
### A TRACT OF LAND BEING PART OF FRACTIONAL
### SECTION 30, TOWNSHIP 46 NORTH, RANGE 4 EAST
### ST. CHARLES COUNTY, MISSOURI

LOCATION MAP

FUTURE DEVELOPMENT

APPROVED

# MUIRFIELD
## PLAT THREE
A TRACT OF LAND BEING PART OF FRACTIONAL
SECTION 30, TOWNSHIP 46 NORTH, RANGE 4 EAST
ST. CHARLES COUNTY, MISSOURI



EXHIBIT 4

PITMAN HILL ROAD

CROSSHAVEN ESTATES

A TRACT OF LAND BEING PART OF U.S. SURVEY 16,
TOWNSHIP 46 NORTH, RANGE 4 EAST OF THE FIFTH PRINCIPAL
MERIDIAN, CITY OF WELDON SPRING,
ST. CHARLES COUNTY, MISSOURI

CROSSHAVEN LANE DRIVE

THIS PLAT CONTAINS 11.329 ACRES

PREPARED FOR:
STAN SEGFRIED CONSTRUCTION CO.
4635 CROSSHAVEN COURT
ST. CHARLES, MO 63304

OUTLOT "A"

OUTLOT "B"

PLAINTIFF'S EXHIBIT 1



The Summit at Whitmoor
A Tract of Land in U.S. Survey 16,
T.46 N., R.4 E.,
St. Charles County, Missouri

EXHIBIT 5


--- S.W.3d ----, 2011 WL 3837157 (Mo.)
**(Cite as: 2011 WL 3837157 (Mo.))**

**H**

Only the Westlaw citation is currently available.

Supreme Court of Missouri,
En Banc.
ST. CHARLES COUNTY, Missouri, Respondent,
v.
LACLEDE GAS COMPANY, Appellant.

No. SC 91539.
Aug. 30, 2011.
Rehearing Denied Jan. 31, 2012.

**Background:** County brought action against gas utility company seeking a declaration that gas utility must bear the cost of relocating gas lines when county widens public road. The Circuit Court, St. Charles County, Jon A. Cunningham, J., entered summary judgment in favor of county, and utility appealed.

**Holdings:** The Supreme Court, Richard B. Teitelman, C.J., held that:
(1) requiring utility to pay the costs of relocating gas lines due to road construction would have amounted to an unconstitutional taking;
(2) requiring county to reimburse gas utility the cost of relocating gas lines did not limit the county's police power over public roads;
(3) doctrine of merger did not preclude gas utility from recovering the cost of relocating its gas lines;
(4) easement constituted a compensable property right irrespective of whether it was acquired prior to or contemporaneously with the creation of the public right-of-way; and
(5) even though language establishing the public roadway appeared before the language establishing the utility easements in subdivision plats, no priority of interest was created in the public roadway.

Reversed and remanded.

West Headnotes

**[1] Appeal and Error 30 ⬡⬡893(1)**

30 Appeal and Error
  30XVI Review
    30XVI(F) Trial De Novo
      30k892 Trial De Novo
        30k893 Cases Triable in Appellate Court
          30k893(1) k. In General. Most Cited Cases
    The standard of review of appeals from summary judgment is essentially de novo; the Court will review the record in the light most favorable to the party against whom judgment was entered.

**[2] Eminent Domain 148 ⬡⬡2.14**

148 Eminent Domain
  148I Nature, Extent, and Delegation of Power
    148k2 What Constitutes a Taking; Police and Other Powers Distinguished
      148k2.14 k. Oil and Gas. Most Cited Cases

**Gas 190 ⬡⬡9**

190 Gas
  190k9 k. Mains, Pipes, and Appliances. Most Cited Cases
  Gas utility's right to construct and maintain its gas lines in public roadway was premised upon an easement, and thus, requiring utility to pay the costs of relocating gas lines due to road construction would have amounted to an unconstitutional taking; subdivision plats specifically and unequivocally established a utility easement that allowed gas company to install and maintain gas lines in the public roadway. U.S.C.A. Const.Amend. 5.

**[3] Dedication 119 ⬡⬡31**

119 Dedication
  119I Nature and Requisites
    119k30 Acceptance
      119k31 k. Necessity. Most Cited Cases

**Dedication 119 ⬡⬡53**



EXHIBIT
6

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

119 Dedication
  119II Operation and Effect
    119k52 Title or Right Acquired
      119k53 k. In General. Most Cited Cases
    When a subdivision plat establishes an easement in favor of a utility, the interest acquired is held by the city, town, village, or county in trust for the public uses set forth; the easement is created upon acceptance by the appropriate entity.

**[4] Easements 141 &#8734;1**

141 Easements
  141I Creation, Existence, and Termination
    141k1 k. Nature and Elements of Right. Most Cited Cases
    An "easement," strictly speaking, does not carry any title to the land over which it is exercised; it is rather a right to use the land for particular purposes.

**[5] Eminent Domain 148 &#8734;85**

148 Eminent Domain
  148II Compensation
    148II(B) Taking or Injuring Property as Ground for Compensation
      148k81 Property and Rights Subject of Compensation
      148k85 k. Easements and Other Rights in Real Property. Most Cited Cases
    Although an easement does not vest title, an easement is a form of private property that can be taken only upon payment of just compensation.

**[6] Eminent Domain 148 &#8734;95**

148 Eminent Domain
  148II Compensation
    148II(B) Taking or Injuring Property as Ground for Compensation
      148k94 Elements of Compensation for Injuries to Property Not Taken
      148k95 k. In General. Most Cited Cases
    Because an easement is subject to the Takings

Clause of the Fifth Amendment, the general rule is that when a utility's right to construct and maintain its utility equipment is premised upon an easement, the utility is not responsible for the costs of relocating its equipment. U.S.C.A. Const.Amend. 5.

**[7] Highways 200 &#8734;88**

200 Highways
  200V Title to Fee and Rights of Abutting Owners
    200k88 k. Use of Highway for Other Public Purposes. Most Cited Cases
    Requiring county to reimburse gas utility the cost of relocating gas lines due to road construction did not limit the county's police power over public roads; county maintained the authority to maintain, improve, and relocate road.

**[8] Municipal Corporations 268 &#8734;661(1)**

268 Municipal Corporations
  268XI Use and Regulation of Public Places, Property, and Works
    268XI(A) Streets and Other Public Ways
      268k660 Power to Control and Regulate
        268k661 In General
          268k661(1) k. In General. Most Cited Cases
    Municipal governments have the exclusive authority to control and regulate public roads; accordingly, any condition or limitation on the government's authority to devote the street to the wants and conveniences is void, as against public policy or as inconsistent with the grant.

**[9] Gas 190 &#8734;9**

190 Gas
  190k9 k. Mains, Pipes, and Appliances. Most Cited Cases
    Gas utility's easement yielded a possessory interest over gas lines located within easement, and thus, doctrine of merger did not preclude gas utility from recovering the cost of relocating its gas lines, even if county was vested with the fee interest in

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

the entire roadway, and had regulatory authority over the public road right-of-way; for doctrine of merger to apply, county was required to show both unity of title and unity of possession.

**[10] Gas 190 ☞9**

190 Gas
    190k9 k. Mains, Pipes, and Appliances. Most Cited Cases
    Gas utility's easement constituted a compensable property right irrespective of whether it was acquired prior to or contemporaneously with the creation of the public right-of-way, and thus, the fact that easement did not predate the establishment of the public road right of way did not divest utility from its right to reimbursement from county for having to relocate gas lines located in utility easement.

**[11] Gas 190 ☞9**

190 Gas
    190k9 k. Mains, Pipes, and Appliances. Most Cited Cases
    Primary objective of subdivision plats was to create both a public roadway and utility easements, and thus, even though language establishing the public roadway appeared before the language establishing the utility easements, no priority of interest was created in the public roadway that would have divested gas utility from its compensable property right in easement.

**[12] Deeds 120 ☞93**

120 Deeds
    120III Construction and Operation
        120III(A) General Rules of Construction
            120k93 k. Intention of Parties. Most Cited Cases

**Deeds 120 ☞95**

120 Deeds
    120III Construction and Operation
        120III(A) General Rules of Construction

            120k95 k. Language of Instrument. Most Cited Cases

**Easements 141 ☞42**

141 Easements
    141II Extent of Right, Use, and Obstruction
        141k39 Extent of Right
            141k42 k. By Express Grant or Reservation. Most Cited Cases
    When interpreting an easement or deed affecting land, courts are to ascertain the intention of the grantor from the whole of the instrument in line with the intent of their faces as gathered from the everyday good sense of their language.

Booker T. Shaw, Mary M. Bonacorsi, Paul D. Lawrence, Carl J. Pesce, Thompson Coburn LLP, St. Louis, for Laclede Gas Company.

Greg H. Dohrman, St. Charles County Counselor's Office, St. Charles, Paul A. Boudreau, Brydon, Swearengen & England PC, Jefferson City, Daniel G. Vogel, Ryan A. Moehlman, Cunningham, Vogel & Rost PC, St. Louis, for St. Charles County, Missouri.

RICHARD B. TEITELMAN, Chief Justice.
    *1 This issue in this case is whether St. Charles County ("county") or Laclede Gas Company ("Laclede") has to pay for the relocation of Laclede's gas lines due to the county's plans to widen a public road. The circuit court entered a summary judgment holding that Laclede had to pay for the relocation. The judgment is reversed, and the case is remanded.

*FACTS*
    Laclede maintains gas lines along Pitman Hill Road in St. Charles County. Pitman Hill Road and the gas lines are located within areas established as public roads on five recorded subdivision plats. Each of the five subdivision plats first establishes public roads and then designates the roads as "utility easements" or a "utility easement." The plats specifically state that one of the purposes of

the utility easements is for the installation and maintenance of "gas lines."

The county is planning to widen Pitman Hill Road. Widening Pitman Hill Road will require Laclede to relocate its gas lines. Laclede declined to pay for the relocation. The county filed a declaratory judgment action to require Laclede to bear the cost of relocation. The circuit court entered summary judgment in favor of the county. Laclede appeals.

*ANALYSIS*

[1] "The standard of review of appeals from summary judgment is essentially de novo." *State ex rel. Koster v. Olive,* 282 S.W.3d 842, 846 (Mo. banc 2009) (citing *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993)). "The Court will review the record in the light most favorable to the party against whom judgment was entered." *Id.* "Summary judgment shall be entered if 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.' " *Id.* (quoting Rule 74.04(c)(6)).

[2] Laclede's first point on appeal is dispositive.[FN1] Laclede asserts that its gas lines are located in utility easements created by the five recorded subdivision plats that establish the location of the public road and associated utility lines. Because easements are "constitutionally cognizable property interests," Laclede concludes that requiring it to relocate its gas lines without compensation amounts to an unconstitutional taking of private property. Laclede is correct.

[3] The subdivision plats specifically and unequivocally established a utility easement allowing Laclede to install and maintain its gas lines in the public roadway. When a subdivision plat establishes an easement in favor of a utility, "the interest acquired is held by the city, town, village, or county in trust for the public uses set forth." *State ex rel. Missouri Highway and Transportation Commission v. London, et al.,* 824 S.W.2d 55, 60

(Mo.App.1991). The easement is created upon "acceptance by the appropriate entity." *Id.* In this case, the subdivision plats unequivocally established an easement in favor of Laclede and Laclede accepted the easement by installing and maintaining gas lines within the easement. Laclede has an easement for the gas lines at issue.

*2 [4][5][6] "An easement, strictly speaking, does not carry any title to the land over which it is exercised; it is rather a right to use the land for particular purposes." *Blackburn v. Habitat Dev. Co.,* 57 S.W.3d 378, 389 (Mo.App.2001) (internal quotations omitted); *Bedard v. Scherrer,* 221 S.W.3d 425, 430–431 (Mo.App.2006). Although an easement does not vest title, an easement is a form of private property that can be taken only upon payment of just compensation. *Panhandle E. Pipe Line Co. v. State Highway Comm'n,* 294 U.S. 613, 617–18, 55 S.Ct. 563, 79 L.Ed. 1090 (1935); *State ex rel. Britton v. Mulloy,* 332 Mo. 1107, 61 S.W.2d 741, 743 (1933). Because an easement is subject to the Takings Clause of the Fifth Amendment, the general rule is that when a utility's right to construct and maintain its utility equipment is premised upon an easement, the utility is not responsible for the costs of relocating its equipment. *Panhandle E. Pipe Line Co. v. State Highway Comm'n,* 294 U.S. 613, 617–618, 55 S.Ct. 563, 79 L.Ed. 1090 (1935); *Riverside–Quindaro Bend Levee Dist., Platte County v. Missouri American Water Co.,* 117 S.W.3d 140, 156 (Mo.App.2003).

In *Panhandle,* the United States Supreme Court held that a pipeline company was not responsible for the cost of relocating its lines to make way for construction of a highway across the company's easement. *Id.* Because the distribution lines were located on a permanent easement, the State's interference with the pipeline company's property rights constituted a taking. *Id.* Similarly, in this case, Laclede cannot be compelled to relocate its gas lines located within the utility easement without compensation from the county. *Riverside–Quindaro,* 117 S.W.3d at 156.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

[7][8] The county raises four primary objections to Laclede's claim for relocation costs. First, the county asserts that its inherent police power over public roads gives it the authority to improve Pitman Hill Road without paying Laclede for the relocation of the gas lines. The law is clear that municipal governments have the exclusive authority to control and regulate public roads. *City of Camdenton v. Sho–Me Power Corp.,* 361 Mo. 790, 237 S.W.2d 94, 98 (1951); 39 Am.Jur.2d Highways, Streets, and Bridges County, section 235. Accordingly, any condition or limitation on the government's authority to "devote the street to the wants and conveniences is void, as against public policy or as inconsistent with the grant." *Sho–Me Power Corp.,* 237 S.W.2d at 98. However, requiring the county to reimburse Laclede for the cost of relocating the gas lines does not limit the county's police power over public roads. The county retains the authority to maintain, improve and regulate Pitman Hill road. Laclede's claim for relocation costs is not a challenge to the city's authority or ability to regulate. Instead, Laclede's claim challenges the county's effort to displace Laclede from its easement by requiring relocation of Laclede's gas lines. Just as the county would be required to reimburse a homeowner for building a road across a yard, the county also is required to reimburse Laclede for displacing the gas lines from Laclede's utility easement.[FN2]

**\*3** [9] Second, the county asserts that pursuant to section 445.070.2 [FN3] and the doctrine of merger, any easement created by the subdivision plats "vest[s] the fee of such parcels of land ... described or intended for public uses" in the county "in trust and for the uses therein named." [FN4] The county's argument is as follows: (1) section 445.070.2 vests the county with the fee interest in the entire public roadway, including any utility easements; and (2) upon acquisition of fee interest pursuant to section 445.070.2, all easement interests merged into the county's interest in the public roadway.

If the county holds the fee interest in the entire

Pitman Hill Road right-of-way pursuant to section 445.070, it does not follow that Laclede is unable to recover relocation costs. The very nature of an easement is that it grants the easement owner the right to a limited use of real property owned by another. A "party holding an easement with a right to use the land for a particular stated purpose does not hold title to the property affected by that easement." *S. Star Cent. Gas Pipeline, Inc. v. Murray,* 190 S.W.3d 423, 430 (Mo.App.2006) (internal citations omitted). Although an easement does not vest title, an easement is a form of private property that can be taken only upon payment of just compensation. *Panhandle E. Pipe Line Co. v. State Highway Comm'n,* 294 U.S. 613, 617–18, 55 S.Ct. 563, 79 L.Ed. 1090 (1935). Thus, the county relies on the doctrine of merger to argue that Laclede's utility easements are wholly encompassed by and have merged into the county's public road rights.

For the doctrine of merger to apply, the county must show unity of title and unity of possession. *See Morgan v. York,* 91 S.W.2d 244, 248 (Mo.App.1936). The county asserts that the undisputed facts and law demonstrate unity of possession due to its inherent police power over both the surface and sub-surface aspects of the public roadway. While the county has regulatory authority over the public road right-of-way, including the utility easements, it is also true that Laclede's easements yield a possessory interest over the gas lines within the utility easement. The doctrine of merger is not applicable.

[10] Third, the county argues that even if Laclede has an easement, Laclede is not entitled to relocation costs because its easement did not predate establishment of the public road right of way. It is true that in both *Panhandle,* 294 U.S. at 617–618, 55 S.Ct. 563, and *Riverside–Quindaro,* 117 S.W.3d at 156, the utilities held easements that predated the government's acquisition of a public right-of-way. However, neither case was premised on the proposition that the utility's easement predated the public right-of-way. Instead, both cases were premised on

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

the proposition that the utility could not be divested of its easement without compensation. An easement is a compensable property right irrespective of whether it was acquired prior to or contemporaneously with the creation of the public right-of-way.

**\*4** [11][12] Finally, the county argues that the primary objective of the subdivision plats was to create a public roadway because the language establishing the roadway preceded the language establishing the utility easements. When interpreting an easement or deed affecting land, courts are to "ascertain the intention of the grantor from the whole of the instrument ... in line with the intent of their faces as gathered from the everyday good sense of their language." *Blackburn v. Habitat Development Co.,* 57 S.W.3d 378, 386 (Mo.App.2001) (citations omitted). The county is correct to note that the language establishing the public roadway appears before the language establishing the utility easements. No case is cited for the proposition that the paragraph order in which matters are mentioned in a subdivision plat creates priorities of interest, and no principle of land or contract law so establishes. While it is undoubtedly true that a primary objective of the subdivision plats was to establish a public road, it is also true that the subdivision required utility service. The primary purpose of the subdivision plats was to establish both a public roadway and the utility easements. As such, the most reasonable way to view the plats is to conclude that the plats established non-exclusive easements permitting both a public roadway and the provision of utility service to the subdivisions.

The judgment is reversed, and the case is remanded.

RUSSELL, BRECKENRIDGE, FISCHER, STITH and PRICE, JJ., and WOLFF, Sr.J., concur.

> FN1. Laclede also argues that the trial court erred in admitting parole evidence showing that Laclede previously had relocated its utility lines without requesting reimbursement for relocation costs. There is

no need to address this argument.

FN2. The county cites to a number of cases involving franchise agreements in which the utility has permission to use a public right of way but has no easement. *See, e.g., Bridgeton v. Missouri–American Water Co.* 219 S.W.3d 226, 232 (Mo. banc 2007); *Union Electric Co. v. Land Clearance for Redevelopment Authority of St. Louis,* 555 S.W.2d 29 (Mo. banc 1977). In both of these cases, the Court held that the utility had to pay the costs of relocation when it maintained utilities pursuant to a franchise agreement rather than an easement.

FN3. All references are to RSMo Supp.2009 unless otherwise indicated.

FN4. Section 445.070 provides:

1. If any person shall sell or offer for sale any lot within any city, town or village, or any addition thereto, before the plat thereof be made out, acknowledged and recorded, as aforesaid, such person shall forfeit a sum not exceeding three hundred dollars for every lot which he shall sell or offer to sell.

2. Such maps or plats of such cities, towns, villages and additions made, acknowledged, certified and recorded, shall be a sufficient conveyance to vest the fee of such parcels of land as are therein named, described or intended for public uses in such city, town or village, when incorporated, in trust and for the uses therein named, expressed or intended, and for no other use or purpose.

3. If such city, town or village shall not be incorporated, then the fee of such lands conveyed as aforesaid shall be vested in the proper county in like trust, and for the uses and purposes aforesaid, and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.W.3d ----, 2011 WL 3837157 (Mo.)
**(Cite as: 2011 WL 3837157 (Mo.))**

none other.

Mo.,2011.
St. Charles County v. Laclede Gas Co.
--- S.W.3d ----, 2011 WL 3837157 (Mo.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

# In the Supreme Court of Missouri

May Session, 2011

St. Charles County, Missouri,
            Respondent,

v. APPEAL FROM THE CIRCUIT COURT OF ST. CHARLES COUNTY

Laclede Gas Company,
            Appellant.

 

 

*Now at this day come again the parties aforesaid, by their respective attorneys, and the Court here being now sufficiently advised of and concerning the premises, doth consider and adjudge that the judgment aforesaid, in form aforesaid, by the said Circuit Court of St. Charles County rendered, be reversed, annulled and for naught held and esteemed, and that the said Appellant be restored to all things which it has lost by reason of said judgment. It is further considered and adjudged by the court that the said cause be remanded to the said Circuit Court of St. Charles County for further proceedings to be had therein, in conformity with the opinion of this court herein delivered; and that the said Appellant recover against the said Respondent costs and charges herein expended, and have execution therefor.*

*(Opinion filed.)*

STATE OF MISSOURI-Sct.

*I, BILL L. THOMPSON, Interim Clerk of the Supreme Court of Missouri, certify that the foregoing is a full, true and complete transcript of the judgment of said Supreme Court, entered of record at the May Session thereof, 2011 and on the 30th day of August 2011, in the above entitled cause.*

*Given under my hand and seal of said Court at the City of Jefferson, this 31st day of January 2012.*

_____
Interim Clerk

_____
Deputy Clerk

**EXHIBIT**

**7**



**Laclede Gas**
*The Original Green Energy™*

David P. Abernathy
Vice President &
Associate General Counsel,
Industrial Relations and
Claims Management

Laclede Gas Company
720 Olive Street, Suite 824
St. Louis, Missouri 63101
Telephone: (314) 342-0536
Facsimile: (314) 641-2161
dabernathy@lacledegas.com

*OriginalGreenEnergy.com*

August 4, 2011

Mr. Mark Nelson
Krupp Construction, Inc.
415 Old State Road
Ellisville, MO 63021

| Ca. Engr. | | Hwy Super |
|---|---|---|
| Asst. Ca. Engr. | | |
| ROW Spec. | AUG 05 2011 | Engr. Mgr. |
| Const. Mgr. | | Sen. Proj. Engr. |
| Const. Engr. | | Engr. Analyst |
| Chief Insp. | | Acct. Clerk |
| Ld. Rel. Spec. | | |

Mr. Nathan Tormala
Highway Department
St. Charles County, Missouri
201 North Second St., Suite 429
St. Charles, MO 63301

Dear Mr. Nelson and Mr. Tormala:

I am in receipt of Mr. Nelson's August 3, 2011 e-mail to Rob Atkinson, concerning Mr. Atkinson's August 2 letter. Mr. Nelson's e-mail does not raise any point or issue to alter Laclede's position set forth in Mr. Atkinson's August 2 letter. Laclede stands by its position as set forth in the August 2 letter.

The only pertinent fact here is that Krupp Construction is building retaining wall number 3 (the "Retaining Wall"): (a) on and in an easement belonging to Laclede; and (b) over a 6 inch gas main belonging to Laclede (the "Gas Main"). As set forth in Mr. Atkinson's letter, Krupp's construction of the Retaining Wall on and in Laclede's easement constitutes an interference with Laclede's easement. Laclede is entitled to seek a court order halting construction of the Retaining Wall, and removal of the Retaining Wall, because the Retaining Wall is located in and on Laclede's easement.

In addition, even without considering Laclede's easement, Krupp is constructing the Retaining Wall over the Gas Main. The Gas Main is currently in service and will continue to be in service until the lawsuit between St. Charles County and Laclede is resolved (after which time Laclede will relocate the Gas Main to the new location shown on the project plans). There is no way to predict how long it will be until Laclede relocates this main. The location of the Retaining Wall above the Gas Main constitutes a safety hazard and an impermissible obstruction should Laclede be required to service the Gas Main prior to its relocation. As a result, Laclede is entitled to seek a court order halting construction of the Retaining Wall, and removal of the Retaining Wall, for this reason as well. In addition, Laclede is entitled to remove the Retaining Wall for these reasons, and is not liable for the cost of repair or replacement of the Retaining Wall.

5383844.1

A subsidiary of The Laclede Group

**EXHIBIT**
**8**

Finally, as discussed in Mr. Atkinson's letter, Krupp failed to follow the utility location procedures and requirements set forth in Chapter 319 of the Revised Statutes of Missouri. Under these statutes, Krupp's failure to follow these procedures and requirements constitutes a presumption of negligence by Krupp which will apply should Laclede be required to enforce its right in a lawsuit.

For all of these reasons, Laclede hereby requests that Krupp cease construction of the Retaining Wall upon receipt of this letter. Failure to do so may force Laclede to file a lawsuit to enforce its rights with respect to this matter, including but not limited to seeking an emergency injunction to prohibit further construction on the Retaining Wall and/or order its removal. I suggest that you discuss these matters with your attorney and with the County's attorney.

Please contact me, or have your attorney contact me, to discuss this matter further. I look forward to hearing from you.

Sincerely,

David P. Abernathy

**From:** Mark Nelson [mailto:marknelson@kruppconstructioninc.com]
**Sent:** Wednesday, August 03, 2011 9:09 AM
**To:** Atkinson, Rob
**Cc:** Tormala, Nathan; Mike Brewer
**Subject:** RE: Pitman Hill - Krupp Construction Retaining Wall

Rob

I understand this is a delicate situation between St. Charles County Highways and Laclede, but I feel like this letter you sent me is an attempt to drag Krupp into the middle of your fight. I won't pretend to know the specifics of the lawsuit and who has right to what but I know I have been contracted to reconstruct Pitman Hill road and that's what we plan to do. We have constructed wall 3 as shown in the plans it and if you look at the cross sections it clearly shows the wall is in a fill area so the locates we called at the begging of the project before we made our fill are sufficient. We installed the fill material that we are digging back through so I f your telling me that dig rite requires Krupp to call in locates for the fill we just installed then I guess we messed up.

Laclede had plenty of opportunity to move or relocate there main in this area and over the entire project but you choose to wait for a court decision. I'm sure you could do the work at your own cost and just bill St. Charles County if you win the lawsuit, but you decide to wait and make all the residence and traveling motorist deal with a longer delayed project. We are just a contractor trying to complete the project in a timely fashion I hope that building the wall hasn't made things more complicated for Laclede but because no one can tell me when you will do your relocations I have no choice but to push on with this project.

# Mark Nelson

**Project Manager / Estimator**
**L. Krupp Construction**
Ellisville MO 63021
marknelson@kruppconstructioninc.com
Office # 636-391-8844 x18
Cell # 314-581-2083

---

**From:** Atkinson, Rob [mailto:RAtkinson@lacledegas.com]
**Sent:** Wednesday, August 03, 2011 8:14 AM
**To:** Mark Nelson
**Subject:** Pitman Hill - Krupp Construction Retaining Wall
**Importance:** Low

Please see the attached letter regarding the construction of a retaining wall on Pitman Hill Rd. A copy has also been sent by U.S. mail.

Thanks,

*Rob Atkinson*
Superintendent, Construction Services
Work   314-658-5542
Cell    314-713-6579



*The Original Green Energy* ™
Clean Energy• Reliable Service • Proud Tradition



**Laclede Gas**

August 2, 2011

Mark Nelson
Krupp Construction, Inc.
415 Old State Road
Ellisville, MO 63021

Mr. Nathan Tormala
Highway Department
St. Charles County, Missouri
201 North Second St., Suite 429
St. Charles, MO 63301

Dear Mr. Nelson and Mr. Tormala:

I am writing to you concerning a retaining wall currently being constructed by your company, Krupp Construction, Inc. ("Krupp") as part of the Pitman Hill Road Phase II project. The retaining wall is Retaining Wall #3, located approximately in the area of Station 14+50 to Station 16+50 (the "Retaining Wall").

As Laclede Gas Company employee Kent Thaemert recently informed you, the Retaining Wall is being constructed in a location directly over and above a Laclede 6 inch gas main (the "Gas Main"). The Gas Main is located in a utility easement belonging to Laclede (the "Utility Easement"). Consequently, the Retaining Wall is also located in, on and above the Utility Easement.

As Mr. Thaemert also informed you, the Gas Main will need to be relocated at some future date to accommodate the County's construction plans as part of the Pitman Hill Road Phase II project. The Gas Main's current location is in conflict with the final plans for the project. As Mr. Thaemert also informed you, the Gas Main and the Utility Easement are the subject of a lawsuit between Laclede and St. Charles County that is currently pending before the Missouri Supreme Court.

The primary issue in that lawsuit is whether Laclede is entitled to compensation for moving its gas mains and lines that are located in utility easements granted in five subdivision plats, including the Gas Main and Utility Easement described herein. Oral argument before the

Page 1

# Laclede Gas

Missouri Supreme Court occurred on May 11, 2011, and the parties are now waiting for the Supreme Court to issue a decision in the case. Laclede's position, as asserted in the lawsuit, is that Laclede is entitled to receive compensation from the County for moving its gas lines as part of the Pitman Hill project, including the Gas Main discussed herein.

The Retaining Wall constitutes an impermissible interference with Laclede's utility easement in that location. The Gas Main will need to be relocated in order to accommodate the County's project plans. Obviously, Krupp's construction of the Retaining Wall directly over the current location of the Gas Main will substantially complicate Laclede's relocation of the Gas Main. In addition, Laclede cannot be held responsible for any damage that may occur to the Retaining Wall during Laclede's construction of the new gas main, or due to any settling following such construction.

Laclede believes that after it moves the Gas Main, it will be entitled to compensation from St. Charles County for the entire actual cost of moving its lines. Should Laclede prevail in the lawsuit with St. Charles County, the costs Laclede will be entitled to recover will include any additional costs incurred because of the presence of the Retaining Wall over the Gas Main and in Laclede's easement. Because Krupp has intentionally and/or negligently constructed the Retaining Wall over the Gas Main and in Laclede's easement, it is possible that St. Charles County will look to Krupp to contribute to the compensation due to Laclede any costs caused by Krupp's construction of the Retaining Wall.

It has also come to our attention that Krupp did not properly obtain utility location services from Missouri's One Call system before beginning construction on the Retaining Wall. According to records Laclede obtained from the Missouri One Call system, Krupp placed a call for locate services on April 4, 2011, for work to begin on April 7, 2011. The markings in the vicinity of the Retaining Wall from this locate were worn away long before construction on the Retaining Wall began. Because the locate markings from the April locate were no longer visible, and because Krupp knew or should have known that a Laclede gas main was in the area, Krupp should have called to request a refresh locate before beginning work on the Retaining Wall. Krupp failed to do so. Krupp instead called for locate services on July 25, 2011, when construction of the Retaining Wall was already well underway. Krupp's failure to place a call for locate services until after it had already begun construction on the Retaining Wall constitutes a violation of the utility location requirements set forth in Revised Statutes of Missouri Chapter 319.

# **Laclede Gas**

In summary, the Retaining Wall as currently being constructed by Krupp will make it substantially more difficult for Laclede to relocate the Gas Main unless and until the Retaining Wall is removed. As such, the Retaining Wall interferes with Laclede's utility easement and thus constitutes a nuisance. Moreover, Krupp was negligent in beginning construction of the Retaining Wall over the Gas Main, and on Laclede's utility easement, including (but not limited to) Krupp's failure to follow the utility location requirements set forth in R.S.Mo. Chapter 319.

Laclede hereby requests that Krupp immediately stop construction of the Retaining Wall. Laclede further requests that, prior to Laclede's work to move the Gas Main, Krupp remove such portions of the Retaining Wall as will interfere with moving the Gas Main. Laclede further requests that Krupp delay any construction on the Retaining Wall until after such time as Laclede has relocated the Gas Main to its permanent new location. Should Krupp fail to comply with these requests, Laclede will take any measures necessary to protect its interests and protect its use of its easement, including but not limited to, filing a lawsuit seeking an injunction requiring removal of the Retaining Wall and any damages Laclede might incur.

Please contact Kent Thaemert or myself to discuss this matter further. You can contact me at (314) 658-5542.

Sincerely,

*Robert Atkinson*

Robert Atkinson
Superintendent, Construction Services
Laclede Gas Company

 # St. Charles County Government

RECEIVED

AUG 1 1 2011

**County Counselor**
Joann Leykam

August 9, 2011

**Associate County Counselors**
Harold A. Ellis
Beverly E. Temple
Charissa L. Mayes
Greg H. Dohrman
Robert E. Hoeynck
Joseph W. Smith

**Litigation Assistant**
Renee Wallen

Mark C. Darrell, Esq.
Sr. Vice President and General Counsel
Laclede Gas Company
720 Olive Street
St. Louis, Missouri 63101

RE:  *Pitman Hill Road Improvement Project*

Dear Mr. Darrell:

   I represent the St. Charles County Highway Department, which is currently in the process of reconstructing a section of Pitman Hill Road in St. Charles County. My client has forwarded to me recent correspondence from Laclede Gas to the Highway Department and more significantly to its contractor for the project, Krupp Construction, Inc. In that correspondence, copies of which are enclosed for your convenience, Laclede asserts non-existent easement rights in a certain piece of ground, demands that Krupp halt construction of a retaining wall, remove portions of it, and makes multiple threats of legal action against Krupp.

   As you may know, the ground in question, which was a road widening dedication strip from Plat Three of the Muirfield Subdivision, was the subject of a declaratory judgment entered by the St. Charles County Circuit Court on November 5, 2009. A copy of that judgment, minus exhibits, is enclosed for your reference. Laclede never sought, much less received, any stay of the judgment pending appeal, so it remains in full force and effect. "[U]nder our laws the judgment is a determination of the rights of the parties thereto until reversed or modified . . . ." *Rodney v. Gibbs*, 82 S.W. 187, 190 (Mo. 1904). Among other dispositive findings, the trial court held "the utility easement rights are wholly encompassed within and have merged into the public road rights, both of which were vested in the County pursuant to § 445.070."

   Laclede has absolutely no justification to assert any present easement rights in the area in question. It is St. Charles County right-of-way. In addition, Laclede's knowledge of the existing contractual relationship between St. Charles County and Krupp Construction, Inc. is obvious, and Laclede's attempted interference with Krupp's performance of its contractual duties was intentional. In road construction projects, as with any major construction, delays imposed upon contractors invariably add to the project's total costs. Fortunately, Krupp's sensible approach to the matter has made this moot for the time being. I am including a copy of Krupp's reply for your information, which also responds to the apparently unfounded allegation that Krupp had failed to comply with the requirements of the Underground Facility Safety and Damage Prevention Act.

**EXHIBIT
9**

If Krupp had instead decided to accede to Laclede's demands, your company would be liable for tortious interference with a contract. I am shocked that your company would so recklessly expose itself to liability that could easily surpass its Pitman Hill Road relocation costs.

St. Charles County will not tolerate unlawful interference with the performance of the Pitman Hill Road construction work. If Laclede continues to assert any unjustified demands against our contractor or any subcontractor, the County will be forced to pursue an injunction and recovery of all appropriate damages. St. Charles County taxpayers cannot be expected to bear any further costs of your company's ongoing disregard of long-established law.

Sincerely,

Greg H. Dohrman
Associate County Counselor

Enclosures

cc:   Mark Nelson, Krupp Construction, Inc.
      Steve Ehlmann, County Executive
      Joann Leykam, County Counselor
      Don Boehmer, Director of Intergovernmental Affairs
      Craig Tajkowski, County Engineer
      Mary M. Bonacorsi, Esq.



**David P. Abernathy**
Vice President &
Associate General Counsel,
Industrial Relations and
Claims Management

September 7, 2011

Laclede Gas Company
720 Olive Street, Suite 824
St. Louis, Missouri 63101
Telephone: (314) 342-0636
Facsimile: (314) 641-2161
dabernathy@lacledegas.com

*OriginalGreenEnergy.com*

Joann Leykam
Greg Dohrman
Office of the County Counselor
100 North Third Street, Suite 216
St. Charles, MO 63301

Mark Nelson
Krupp Construction, Inc.
415 Old State Road
Ellisville, MO 63021

Re:   Pitman Hill Road Project
      Retaining Wall Constructed on Existing Gas Main

To All Concerned:

I am writing as a follow-up to Mark Darrell's August 26, 2011 letter to Ms. Leykam, and
my August 4, 2011 letter to Messrs. Nelson and Tormala. By those letters, Laclede
notified St. Charles County and Krupp Construction, Inc. that Retaining Wall #3, which is
being constructed by Krupp (at the County's instruction and direction) as part of the
Pitman Hill Road Phase II project, is located directly over and above a Laclede 6 inch gas
main located in a utility easement belonging to Laclede. In response, the County has taken
the position that Laclede's gas main is not located in an easement.

As you are likely aware, on August 30, 2011, the Missouri Supreme Court handed down its
Opinion in the *St. Charles County v. Laclede Gas Company* litigation concerning Pitman
Hill Road. A copy of the Missouri Supreme Court's Opinion is enclosed for your
convenience. In that Opinion, the Missouri Supreme Court clearly and unequivocally held
that the subject Laclede gas lines along Pitman Hill Road (including the main under
Retaining Wall #3) are located in easements belonging to Laclede.

As a result of the Missouri Supreme Court's August 30 Opinion, neither the County nor
Krupp can assert the position that the gas main under Retaining Wall #3 is not located in
an easement belonging to Laclede. With there no longer being any debate that Laclede's
main is located in an easement, Krupp's construction of the retaining wall on top of
Laclede's easement clearly constitutes an actionable interference with Laclede's easement.



A subsidiary of The Laclede Group

Laclede can assert a claim for nuisance based on interference with Laclede's easement. *See, e.g., Mondelli v. Saline Sewer Co.*, 628 S.W.2d 697, 699 (Mo. App. 1982) ("Interference with or obstruction of an easement is a nuisance."). Under a nuisance claim, Laclede may be entitled to seek damages for interference with its easement, as well injunctive relief. *Id.; see also M.H. Siegfried Real Est. Co., Inc. v. Renfrow*, 592 S.W.2d 488, 494 (Mo. App. 1979); and *Judge v. Durham*, 281 S.W.2d 16, 18 (Mo. App. 1955).

Krupp's construction of Retaining Wall #3, at the County's instruction and direction, has substantially (if not entirely) diminished the value of Laclede's easement in that location. Laclede is unable to service the gas main located underneath the Retaining Wall until such time as the Retaining Wall is removed. The Retaining Wall further constitutes a danger to public safety for this reason as well. In addition, under a nuisance claim Laclede is entitled to injunctive relief ordering removal of the retaining wall. These claims are in addition to any other claims Laclede may be able to assert for construction of the retaining wall, as discussed in previous correspondence to Krupp and the County (such as claims arising from Krupp's failure to follow Missouri statutes concerning location of utilities prior to construction).

Laclede hereby again requests that Krupp cease any construction on Retaining Wall #3, and further, that Krupp remove Retaining Wall #3 from Laclede's easement until such time as Laclede can relocate its gas main to a suitable location. Laclede requests that the County provide a schedule to Laclede for the removal of Retaining Wall #3 no later than one week from the date of this letter. If Krupp fails to do so, Laclede reserves the right to pursue any remedies available at law or in equity, including but not limited to the claims discussed above and in Laclede's prior correspondence.

In addition, it is Laclede's understanding that under the County's current plans for the Pitman Hill Road project, Laclede's gas main under Retaining Wall #3 will need to be located in an area outside of Laclede's easement in which the gas line is currently located. The Missouri Supreme Court's August 30 Opinion clearly establishes that the County must compensate Laclede for the cost of moving any such lines. In this particular location, such compensation will also require the acquisition of a new easement by Laclede into which the gas line will be moved. Laclede hereby requests that the County notify Laclede of its intentions concerning the provision of such an easement to Laclede into which the gas line can be moved. This notification should include the location of the new easement, and the means by which such new easement will be granted to Laclede (*e.g.*, whether the County will grant to Laclede a new easement located on property owned in fee by the County, or other such means for granting an easement to Laclede).

I look forward to hearing from you concerning resolution of these issues.

Sincerely,

David P. Abernathy

Enclosure
cc:. Mark Darrell

PLAT G



SECTION TWO

PART OF 104 N.W. 1/4 SEC.
OF N.W. 1/4 SEC. 25





St. Charles Halle Plat Five

PART OF E½ OF NW¼ OF FRAC SEC. 26
PART OF SE½ OF SW¼ OF FRAC SEC. 25
TWP 47 N.R.8.E.

EXHIBIT
12

